IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Ruth DePaulo )<br>6519 Hamden Rd. )<br>Parma Heights, OH 44130-4024, )<br>  )<br>Plaintiff, )<br>  )<br>vs. )<br>  )<br>Medicredit, Inc. )<br>3620 I-70 Dr. SE )<br>Suite C )<br>Columbia, MO 65201, )<br>  )<br>Defendant. ) | **CLASS ACTION COMPLAINT**<br>***(Jury Demand Endorsed Hereon)*** |

I.   INTRODUCTION

1. Defendant Medicredit, Inc. ("Medicredit") is a debt collector for medical providers.

2. Medicredit is a wholly-owned subsidiary of The Outsource Group, Inc.

3. The Outsource Group, Inc. is a medical debt collector.

4. Medicredit is a large collections agency focused exclusively on medical and healthcare debts.

5. Parallon® completed the acquisition of The Outsource Group, Inc. in July 2013.

6. Parallon collects more than $41 billion and interacts with 37 million patients annually.

7. Plaintiff Ruth DePaulo ("DePaulo") is an individual residing in Parma Heights, Ohio, who received a debt collection notice from Medicredit.

8. DePaulo is a consumer under both the Fair Debt Collection Practices Act ("FDCPA") and Consumer Sales Practices Act ("CSPA").

9. The debt in question arose out of a transaction that was for personal purposes.

10. This class action seeks equitable and monetary relief to remedy Medicredit's regular and repeated violation of the FDCPA and the CSPA in sending out debt collection notices on debts not owed.

## II. STATEMENT OF FACTS

11. DePaulo seeks injunctive relief and other equitable relief, as well as an award of appropriate actual damages, statutory damages, compensatory damages, reasonable attorney's fees, and such other relief as this Honorable Court deems appropriate.

12. On or about February 24, 2017, DePaulo was involved in an automobile accident.

13. DePaulo received treatment at Southwest General Hospital ("SWGH").

14. DePaulo received a bill from SWGH for $846.46.

15. DePaulo informed SWGH that she was in an accident and that the bill would eventually be paid.

16. SWGH told DePaulo that that would not be a problem.

17. On October 6, 2017, DePaulo's attorney sent SWGH a check for $846.46 in full payment of all amounts owed by DePaulo.

18. The check was cashed.

19. Despite DePaulo's full payment, on or around October 25, 2017, she received a collection notice from Medicredit stating that the account was placed with "this agency with the full intention of collecting on this account."

20. Despite DePaulo's full payment of the debt, the Medicredit notice indicated that she had a "Balance due on file: $846.46."

21. There was no statement as to whether DePaulo would be charged interest on the amount allegedly due.

22. When Medicredit sent the notice, it knew or should have known that the amount stated was not owed.

23. Medicredit may have reported DePaulo delinquent to collection agencies.

24. Medicredit never sent DePaulo a correction or acknowledgment that the debt was not owed.

25. Medicredit uses the same notice with all of its accounts.

26. Medicredit uses the same practices in determining if a debt is owed when it sends its notices.

27. DePaulo was upset when she received the notice for a debt that was not owed.

28. DePaulo was worried her credit might be negatively affected.

29. DePaulo missed time from work, pleasure and family to deal with the wrongful notice.

30. DePaulo incurred actual costs in addressing the wrongful notice.

31. DePaulo's privacy was invaded.

32. DePaulo was required to consult an attorney to deal with the wrongful notice.

### III. Applicable Law

**A. FDCPA**

33. "Congress passed the FDCPA to address 'what it considered to be a widespread problem' of consumer abuse at the hands of debt collectors." <u>Wise v. Zwicker & Assocs., P.C.</u>, 780 F.3d 710, 712-713 (6th Cir.2015), quoting <u>Frey v. Gangwish</u>, 970 F.2d 1516, 1521 (6th Cir.1992)." <u>Taylor v. First Resolution Invest. Corp.</u>, 148 Ohio St.3d 627, 2016-Ohio-3444.

34. "The intent of the FDCPA is to 'eliminate abusive debt collection practices' that have contributed to personal bankruptcies, job loss, and invasions of individual privacy. 15

U.S.C. 1692(a) and (e); <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.</u>, 559 U.S. 573, 577, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010)." Id.

35. "In reaction to the size of the problem, [Congress] crafted '**an extraordinarily broad' remedial statute.**' Wise at 713, quoting Frey at 1521." Id.

36. "The FDCPA prohibits debt collectors from employing 'any false, deceptive, or misleading representation or means in connection with the collection of any debt,' including misrepresenting 'the character, **amount**, or legal status of any debt.' 15 U.S.C. 1692e(2)(A)." Id.

37. "A debt collector may not employ any 'unfair or unconscionable means to collect or attempt to collect any debt,' 15 U.S.C. 1692f, and cannot collect 'any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law,' 15 U.S.C. 1692f (1)." Id.

38. A plaintiff must prove four essential elements to establish a prima facie case for a violation of the FDCPA: 1. [T]he plaintiff is a natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692(d) for purposes of a cause of action, 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11); 2. [T]he "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C.A. § 1692a(5); 3. [T]he defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and 4. [T]he defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A § 1692a–1692o; 15 U.S.C.A § 1692a; 15 U.S.C.A § 1692k. <u>Whittiker v. Deutsche Bank Natl. Trust Co.</u>, 605 F.Supp.2d 914, 938-939 (N.D. Ohio 2009).

39. "A plaintiff does not need to demonstrate that he or she suffered actual damages in order to prevail on an FDCPA claim; **the FDCPA 'places the risk of penalties on the debt**

**collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief.'** Stratton v. Portfolio Recovery Assocs., L.L.C., 770 F.3d 443, 449 (6th Cir.2014)." Taylor, supra.

40. "Further, courts have characterized the FDCPA as a **strict liability statute**, Fed. Home Loan Mtge. Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir. 2007); to establish liability, a plaintiff does not have to prove knowledge or intent of the debt collector, Wise, 780 F.3d at 713." Id.

B. CSPA

41. The CSPA also provides protections for consumer debtors against debt collectors. Taylor, supra.

42. The act states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A).

43. R.C. 1345.03(A) provides that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction."

44. "State and federal courts in Ohio have held that the OCSPA applies to debt collectors ... See, e.g., Hartman v. Asset Acceptance Corp., 467 F.Supp.2d 769, 780 (S.D. Ohio 2004), and cases cited therein." Taylor, supra.

IV. CLASS ALLEGATIONS

45. Pursuant to Civ. R. 23 of the Ohio Rules of Civil Procedure, DePaulo brings this action on behalf of herself and a class of persons similarly situated, to remedy the ongoing unlawful, unfair and/or deceptive collection practices alleged herein, and to seek redress on behalf of all those persons who have been harmed thereby.

46. The CSPA Class is defined as all persons who:

a. Received treatment at any medical facility whose bills were assigned to Medicredit for collection;

b. Who received a notice similar to the one received by DePaulo from Medicredit stating that an amount was owed;

c. Where a demand for payment was made;

d. Which person had paid the invoices of that provider by check mailed at least 7 days before the notice was sent or by credit card at least 4 days before the notice was sent or who submitted a debt validation dispute which was found to be valid;

e. Where the notice was sent to an Ohio address; and

f. In the four years preceding the filing of this Complaint.

47. The FDCPA Class is defined to include all persons who:

a. Received treatment at any medical facility whose bills were assigned to Medicredit for collection;

b. Who received a notice from Medicredit stating that an amount was owed;

c. Where a demand for payment was made;

d. Which person had paid the invoices of that provider by check mailed at least 7 days before the notice was sent or by credit card at least 4 days before the notice was sent or who submitted a debt validation dispute which was found to be valid;

e. Where the notice was sent to an Ohio address; and

f. In the one year preceding the filing of this Complaint.

48. The class is so numerous that joinder of all members would be impracticable. The exact size of the proposed class and the identity of the members thereof are readily ascertainable from Medicredit's business records including records of disputed debt found to be legitimate.

49. There is community of interest among the members of the proposed class in that there are questions of law and fact common to the proposed class that predominate over questions affecting only individual members. These questions include, *inter alia*:

    a. Did they receive treatment from one of the entities?

    b. Did they receive a notice from Medicredit?

    c. Did Medicredit demand payment?

    d. Did the class member pay the amount demanded?

    e. Did Medicredit violate the FDCPA?

    f. Did Medicredit violate the CSPA?

    g. Were Medicredit's representation about the amount owed fraudulent?

    h. Is Medicredit a debt collector?

    i. Did Medicredit include amounts on Statements without a proper basis for asserting that payments were due?

    j. Was a false representation made of the "amount," "character" or "legal status" of the debts Medicredit sought to collect?

    k. Was a "false representation or deceptive means used to collect or attempt to collect" the underlying debts?

50. DePaulo's claims are typical of those of the class she seeks to represent, and she will fairly and adequately represent the interests of the class.

51. DePaulo is represented by counsel competent and experienced in both consumer protection and class action litigation.

52. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by individual class members may be relatively small compared to the expense and burden of litigation, it would be impracticable and

economically infeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Medicredit, and would establish incompatible standards of conduct for Medicredit.

## V.   FIRST CLAIM FOR RELIEF
## (Violations of the FDCPA)

53. DePaulo realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as though expressly restated herein.

54. The FDCPA prohibits debt collectors from employing "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including misrepresenting "the character, **amount**, or legal status of any debt." 15 U.S.C. 1692e(2)(A).

55. A debt collector may not employ any "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. 1692f, and cannot collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. 1692f(1).

56. DePaulo is a natural person and consumer.

57. The original debt arose for personal purposes.

58. Medicredit is a debt collector.

59. Medicredit sent a notice to DePaulo demanding payment on a debt not owed.

60. Medicredit violated the FDCPA.

61. The FDCPA is a strict liability statute.

62. As a direct and proximate result, DePaulo and members of the class have suffered actual and statutory damages and attorney's fees.

63. As a direct and proximate result, members of the class are entitled to disgorgement of any monies paid on debts not owed.

## VI. SECOND CLAIM FOR RELIEF
### (Violation of the CSPA and Invasion of Privacy)

64. DePaulo realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as though expressly restated herein.

65. The CSPA states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A).

66. R.C. 1345.03(A) provides that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction."

67. The CSPA applies to debt collectors.

68. DePaulo is a consumer under the CSPA.

69. The transaction was from personal purposes.

70. Medicredit violated the CSPA by sending a demand notice for a debt not owed.

71. Medicredit invaded Depaulo's privacy by send a demand for a debt it knew or should have known was not owed.

72. As a direct and proximate result, DePaulo and members of the class have suffered actual and statutory damages.

73. As Medicredit's act were willful, DePaulo and members of the class are entitled to attorney's fees.

Wherefore, DePaulo and the class demand judgment:

    a. Actual damages and statutory damages in the amount of $1,000 per class member:

9

Electronically Filed 12/20/2017 16:56 / / CV 17 890672 / Confirmation Nbr. 1256167 / CLCXH

EXHIBIT A

      b.      An injunction prohibiting Medicredit from engaging in the illegal action in the future;

      c.      Disgorgement of any monies collected by Medicredit on the effected accounts;

      d.      Attorney's fees;

      e.      Any other relief the Court deems appropriate.

## JURY DEMAND

DePaulo demands a trial by jury.

      Respectfully submitted,

/s/James S. Wertheim
JAMES S. WERTHEIM (0029464)
James S Wertheim LLC
24700 Chagrin Blvd., Suite 309
Beachwood, OH 44122
(Ph.) 216-225-6663
wertheimjim@gmail.com

*Counsel for Plaintiff*